**2021 UT App 47**

## THE UTAH COURT OF APPEALS

KODIAK AMERICA LLC AND STEVE LUCZAK,
Appellees,
*v.*
SUMMIT COUNTY,
Appellant.

Opinion
No. 20200217-CA
Filed April 15, 2021

Third District Court, Salt Lake Department
The Honorable Keith A. Kelly
No. 170908225

Margaret H. Olson, Helen E. Strachan, and
Blaine S. Thomas, Attorneys for Appellant

Jonathan O. Hafen, Robert A. McConnell,
Justin P. Matkin, and Laura G. Kennedy,
Attorneys for Appellees

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

ORME, Judge:

¶1     Summit County (the County) seeks interlocutory review of the district court's grant of partial summary judgment in favor of Kodiak America LLC and its principal, Steve Luczak (collectively, Kodiak). The court determined that res judicata did not bar Kodiak's initiation of the current action, because the County and Kodiak were not in privity in a prior adjudication. The County argues that the court's ruling effectively overruled a determination made by the prior court when it denied Kodiak's motion to intervene on the rationale that Kodiak's and the County's "interests were the same." The County also argues that Kodiak "circumvent[ed] established procedure" by initiating the

current action instead of directly appealing the prior adjudication. We disagree on both counts and affirm.

## BACKGROUND[1]

¶2      Kodiak purchased land in an agricultural subdivision that preserved certain areas "solely for agricultural and open space purposes." Soon after the purchase, Kodiak sought a grading permit from the County to install a motocross track, which entailed motorcycle trails and jumps over a substantial portion of the property. The County granted the permit for personal use in November 2014.

¶3      After receiving complaints about the motocross track, the County issued Kodiak a "Stop Work Notice" in December 2015, followed by a cease and desist letter and a "Final Land Use Determination" letter in 2016. In the land use determination letter, the County explained that "Grading Permits regulate the excavation of soils, but do not constitute land use permits . . . , nor can they be utilized to amend a subdivision plat" and therefore "they cannot be relied upon to change a 'use' of property." The County stated that "motocross track and use is prohibited and constitutes a violation of the [subdivision's] First Amended Plat." Accordingly, the County ordered Kodiak "to CEASE and DESIST all further use and operation of this motocross track immediately and restore/revegetate all associated areas of disturbance."

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

¶4    Kodiak appealed the land use determination to the Summit County Council (the Council). The Council determined "that the land use determination . . . is correct and shall be upheld, but with limitations and conditions that recognize equitable bars to enforcement; namely, zoning estoppel." Specifically, the Council ruled that the County was estopped from "requir[ing] Kodiak to remediate or restore the grading work completed" after the County issued the grading permit and from "prohibiting private, personal use of a motocross course."

¶5    In August 2016, owners of a neighboring parcel (Neighbors) petitioned the Third District Court in Summit County for review of the Council's decision (the *Johnson* case). Neighbors named the County, but not Kodiak, as a respondent in the case, and the County defended the Council's decision. In February 2017, the court set aside the Council's decision, concluding "that the County is not estopped from prohibiting private, personal use of a motocross course" on Kodiak's property.

¶6    A little over 90 days later, Kodiak moved for leave to intervene in the *Johnson* case, seeking relief from the decision. Both the County and Neighbors opposed the motion. The County argued, in relevant part, that Kodiak's motion was untimely and that there were "no grounds for Kodiak's motion for relief from the order." The County further stated that if the court granted Kodiak's motion to intervene, "the County shall then oppose Kodiak's contemporaneously filed motion for relief from the Court Ruling."

¶7    The court in the *Johnson* case denied the motion, concluding, among other things, that it was untimely and that the County had adequately represented Kodiak's interests. Concerning their interests, the court stated that although they might have had "different motives for litigating," Kodiak's "interests were the same as the County—to have the Council's

zoning estoppel decision upheld." And, according to the court, because Kodiak and the County shared the same interests in the litigation, "a presumption of adequacy" arose, which the court found Kodiak had not sufficiently rebutted. Kodiak did not appeal the denial of its motion to intervene.

¶8 In February 2017—shortly after the court set aside the Council's decision on zoning estoppel but before Kodiak moved to intervene in the *Johnson* case—the County issued a "Notice of Violation" (the NOV) to Kodiak. The NOV alleged that Kodiak had violated the County's "Final Land Use Determination," as effectively reinstated by the court in the *Johnson* case, and the NOV further required Kodiak to "[r]estore and revegetate [the] motocross track area along with all other areas modified and disturbed for the purpose of grading [the] motocross track area" and to post a performance bond. The NOV also informed Kodiak that it could "dispute the issuance of this notice" by requesting a hearing with the Office of the Administrative Law Judge. Kodiak availed itself of that opportunity, and an administrative law judge (the ALJ) ruled that the district court's decision in the *Johnson* case "stands as the final decision as it relates to [the NOV]."

¶9 Kodiak then initiated the present action by petitioning for review of the ALJ's decision in the Third District Court in Salt Lake County, which venue the County admitted was proper.[2]

2. At the time, according to the County, the judge who decided the *Johnson* case was still assigned to the Third District Court in Summit County. Nonetheless, a judge based in Salt Lake County was assigned to resolve the action now before us. We are somewhat perplexed as to how a Summit County administrative decision came to be the subject of a judicial proceeding in Salt Lake County. But, as noted, the County did not object to this venue choice, and it did not seek to have the matter transferred to the Summit County Department of the Third District Court.

Kodiak and the County filed cross-motions for partial summary judgment on the issue of res judicata. Kodiak argued that the ALJ had erred in concluding that it was bound by the court's decision in the *Johnson* case because it "was not a party to that lawsuit, and therefore, res judicata has no application." The County argued that res judicata applied because the court in the *Johnson* case, in ruling on Kodiak's untimely motion to intervene, had already essentially determined that Kodiak and the County were in privity when it ruled that the County had adequately represented Kodiak's interests in the *Johnson* case.

¶10 The district court granted partial summary judgment in Kodiak's favor. It noted that "this Court is not being asked in the pending motions to overturn [the prior court's] decision in the *Johnson* Case; rather these cross-motions raise the issue of whether [the] decision in the *Johnson* Case is binding on Kodiak as a matter of law." The court then determined that although Kodiak's position in the *Johnson* case was "consistent with the original position of the County," Kodiak and the County were nevertheless not in privity because of the adverse position the County took "while the *Johnson* Case was still pending." Specifically, in opposing Kodiak's motion to intervene, the County asserted that there were "no grounds for Kodiak's motion for relief from the order" and that it would oppose Kodiak's efforts to seek relief from the order in the event the court permitted Kodiak to intervene. Based on the foregoing, the court concluded that "[t]he County's adverse position makes clear as a matter of law that there is no privity between Kodiak and the County" and that res judicata did not apply to Kodiak in the case now before us.

¶11 The County petitioned for permission to appeal from this interlocutory order. *See* Utah R. App. P. 5(a). We granted the petition.

ISSUE AND STANDARD OF REVIEW

¶12 The County challenges the district court's grant of partial summary judgment in Kodiak's favor. "Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Conder v. Hunt*, 2000 UT App 105, ¶ 8, 1 P.3d 558 (quotation simplified). *See* Utah R. Civ. P. 56(a). We therefore "review a district court's grant of summary judgment for correctness and afford no deference to the court's legal conclusions." *Jones v. Farmers Ins. Exch.*, 2012 UT 52, ¶ 6, 286 P.3d 301 (quotation simplified). Likewise, we review for correctness a district court's ruling on whether res judicata bars an action. *Van Leeuwen v. Bank of Am.*, 2016 UT App 212, ¶ 6, 387 P.3d 521.

ANALYSIS

## I. Res Judicata

¶13 The County first argues that in ruling that it was not in privity with Kodiak for purposes of res judicata, the district court effectively "overrule[d]" the Johnson court, which had already determined for purposes of adequate representation in the intervention context that Kodiak's "interests were the same as the County—to have the Council's zoning estoppel decision upheld."[3] *See generally Mascaro v. Davis*, 741 P.2d 938, 946 (Utah

---

3. The County also challenges the district court's res judicata analysis on the ground that the court characterized the County's opposition to Kodiak's motion to intervene as occurring "while the *Johnson* Case was still pending." The County argues that Kodiak's motion—made in excess of 90 days after the court in the *Johnson* case issued its final, appealable order—was not, in fact, made during the pendency of the *Johnson* case. While this point would appear to be well-taken based on the briefing,

(continued…)

1987) ("[O]ne district court judge cannot overrule another district court judge of equal authority."). *Accord* Utah Code Ann. § 78A-2-226(1) (LexisNexis 2018). We disagree with the County.

¶14 The doctrine of res judicata comprises claim preclusion and issue preclusion, both of which "serve the important policy of preventing previously litigated issues from being relitigated." *Van Leeuwen v. Bank of Am.*, 2016 UT App 212, ¶ 7, 387 P.3d 521 (quotation simplified). For either branch to apply, the party against whom the doctrine is invoked must have been a party to the prior adjudication or in privity with a party that was. *See Oman v. Davis School Dist.*, 2008 UT 70, ¶ 29, 194 P.3d 956 (issue preclusion case); *Hansen v. Bank of N.Y. Mellon*, 2013 UT App 132, ¶ 5, 303 P.3d 1025 (claim preclusion case).

¶15 Here, despite Kodiak's use of its property being the subject of Neighbors' petition for review, it is undisputed that Kodiak was not a party to the *Johnson* case. Accordingly, for res judicata to bar the current case, Kodiak must have been in privity with the County in the *Johnson* case. *See Conder v. Hunt*, 2000 UT App 105, ¶ 12, 1 P.3d 558 ("One who is denied intervention is not considered a party to the prior action and

_____

(…continued)

Kodiak suggested for the first time at oral argument that although the ruling had been entered in the *Johnson* case, no final judgment had been entered when the intervention motion was filed. Thus, Kodiak suggests the *Johnson* case really was still pending after all. Because we conclude that Kodiak and the County were not in privity at the time the court in the *Johnson* case entered its order setting aside the Council's decision, *see infra* ¶ 23, we need not address whether, in reaching its decision on privity for purposes of res judicata, it was proper for the court to consider the adverse position the County took on Kodiak's motion to intervene.

cannot be bound by it unless he or she is in privity with a party to the prior action who has sufficiently similar interests.").

¶16 Although similar in some respects, the determinations of whether parties are in privity for purposes of res judicata, and whether one party adequately represents the interests of another for purposes of a motion to intervene, trigger two distinct inquiries. In the context of res judicata, "the legal definition of a person in privity with another is a person so identified in interest with another that he represents *the same legal right*." *Press Publ'g, Ltd. v. Matol Botanical Int'l, Ltd.*, 2001 UT 106, ¶ 20, 37 P.3d 1121 (emphasis added) (quotation otherwise simplified). "Examples of parties that have been found to be in privity with one another—and therefore potentially subject to [res judicata] in a subsequent case—are officers or owners of a closely held corporation, partners, co-conspirators, agents, alter egos or other parties with similar legal interests." *Bell Canyon Acres Homeowners Ass'n v. McLelland*, 2019 UT 17, ¶ 13 n.5, 443 P.3d 1212 (quotation simplified). Moreover, Utah courts have "a consistent policy of resolving doubts in favor of permitting parties to have their day in court on the merits of the controversy." *Ruffinengo v. Miller*, 579 P.2d 342, 344 (Utah 1978).

¶17 On the other hand, when moving to intervene, a would-be intervenor must show, among other things, "that its interest is not 'adequately represented by existing parties.'" *Supernova Media, Inc. v. Pia Anderson Dorius Reynard & Moss, LLC*, 2013 UT 7, ¶ 22, 297 P.3d 599 (quoting Utah R. Civ. P. 24(a)). "Adequacy of representation generally turns on whether there is an identity or divergence of interest between the potential intervenor and an original party and on whether that interest is diligently represented." *Id.* ¶ 48 (quotation simplified). It does not require that the existing party and putative intervenor have the same legal interest or even the same motive for litigating, merely that they share the same objective in doing so. *See Skypark Airport Ass'n v. Jensen*, 2011 UT App 230, ¶ 5, 262 P.3d 432.

¶18 Moreover, in contrast to evaluating privity, "a presumption of adequacy" arises in the intervention context where the litigation interest of a participating party and the interest of the would-be intervenor are the same. *See Beacham v. Fritzi Realty Corp.*, 2006 UT App 35, ¶ 9, 131 P.3d 271. This presumption places a "minimal" burden on putative intervenors, *id.* ¶ 8, of rebutting it by presenting "some evidence of diverging or adverse interests," such as "that the representative party has an interest adverse to the applicant, has colluded with the opposing party, or is otherwise unable to diligently represent the applicant's interest," *Supernova Media*, 2013 UT 7, ¶ 49 (quotation simplified). Thus, even when courts resolve doubts against a finding of privity for res judicata purposes, they presume in the intervention context that a party will adequately represent the interests of a putative intervenor where "[i]t appears, at least superficially," that their interests are aligned. *See Beacham*, 2006 UT App 35, ¶ 10. *Compare Ruffinengo*, 579 P.2d at 344 (stating that courts have "a consistent policy of resolving doubts [concerning privity] in favor of permitting parties to have their day in court on the merits of the controversy"), *with Beacham*, 2006 UT App 35, ¶ 9 (discussing the presumption of adequate representation a putative intervenor must rebut).

¶19 In sum, the core difference between privity and adequate representation is that privity requires that the parties have a relationship that entails their having the same legal right or legal interest, whereas adequate representation requires only that the parties share an interest in the same outcome of litigation regardless of motivation or their respective legal rights. This distinction becomes readily apparent when comparing the application of these two concepts.

¶20 In *Bell Canyon*, our Supreme Court held, in relevant part, that all homeowners subject to the same restrictive covenants were not in privity with a handful of homeowners who brought suit seeking to enforce those covenants against four violators. 2019 UT 17, ¶¶ 3, 13 & n.5. The Court stated that "[t]he outsiders

cannot be considered privies of any party joined in this action simply by virtue of also owning property subject to the same restrictive covenants" because "[t]he individual property rights held by the outsiders are separate and distinct from the individual property rights held by the named parties." *Id.* ¶ 13 n.5. Accordingly, the court determined, because

> the parties cannot be said to have rights so similar such that the named parties represent the *same* legal rights as the outsiders[,] . . . any of the outsiders' rights under the restrictive covenants may only be determined—and therefore their legal interests may only be affected—in an action in which they are joined as parties.

*Id.* (emphasis in original)*.* Similarly, the Court held in *Ruffinengo* that a homeowner who sued a neighbor to enforce restrictive covenants was not in privity with other homeowners who had previously and unsuccessfully sued the neighbor to enforce those same covenants. 579 P.2d at 343–44. Thus, when analyzing privity, the Court looked to the legal rights the plaintiffs asserted in each lawsuit that were personal to the plaintiffs rather than basing its decision only on the fact that the plaintiffs in each case shared an interest in achieving the same outcome against the same defendant through litigation.

¶21    Conversely, in *Beacham*, an employee sued the owner of the property on which he was injured while unloading a heavy object during the course of his employment. 2006 UT App 35, ¶ 2. His employer's workers' compensation carrier moved to intervene in the lawsuit to recover from the property owner sums it had paid to the employee, which motion the district court denied. *Id.* ¶¶ 3–4. This court affirmed the denial, concluding that the insurer had failed to rebut the presumption of adequate representation that arose after "[i]t appear[ed], at least superficially, that [the insurer's] interest is generally aligned with that of the [employee] because both seek to

maximize the compensation paid from [the property owner]." *Id.* ¶¶ 10, 13. Unlike in the res judicata privity context, it was irrelevant for purposes of adequate representation in the intervention context that the existing party and would-be intervenor were asserting distinct legal rights. Rather, the relevant inquiry was whether the existing party and would-be intervenor both aimed to achieve the same outcome through litigation.

¶22   In sum, the court's determination in the *Johnson* case regarding whether the County adequately represented Kodiak's interests so as to preclude intervention, and the court's determination in this case as to whether the County and Kodiak were in privity for purposes of res judicata, represent separate and distinct inquiries. Thus, the district court in the present case did not "overrule" the prior court when it determined that the County and Kodiak were not in privity.

¶23   Further, in deciding whether the court ruled correctly in concluding that the County and Kodiak were not in privity with respect to the *Johnson* case, we conclude, although on slightly different grounds, that its ruling was correct. Kodiak and the County clearly were not defending the same legal right in opposing Neighbors' challenge to the Council's decision. Kodiak's legal interest in the *Johnson* case was that of a property owner wishing to use its land in a certain manner, whereas the County's legal interest was limited to defending the Council's decision.[4] Accordingly, because "the parties cannot be said to

---

4. This definitely represented a shift on the County's part. Prior to the Council deciding that zoning estoppel applied, the County's legal objective was to enjoin Kodiak from violating both the subdivision's First Amended Plat and county ordinance by using its property for motocross purposes. This shift underscores the less direct, more transitory legal interest the

(continued…)

have rights so similar such that the [County] represent[s] the *same* legal rights" as Kodiak, *see Bell Canyon*, 2019 UT 17, ¶ 13 n.5 (emphasis in original), the district court did not err in holding that the County and Kodiak were not in privity and that res judicata did not bar Kodiak's effort to have its day in court through its initiation of the present case.

## II. Procedure

¶24 The County also argues that Kodiak impermissibly "circumvent[ed] established procedure" by challenging the NOV in the current proceeding instead of directly appealing the court's final order in the *Johnson* case.[5] But because "[a] decision not to permit intervention is not necessarily a reflection on the merits of the would-be intervenor's claims," *see Conder v. Hunt*,

---

(…continued)
County had as compared to the direct, unchanging interest of the affected property owner, Kodiak.

5. The County also argues that it was procedurally inappropriate for Kodiak to challenge the court's ruling in the *Johnson* case in a subsequent administrative hearing and to later petition for review of the ALJ's decision to the district court in the present case. The County contends that "because the ALJ is not an appeal authority" and "[b]ecause the Council had already determined that Kodiak's use was illegal and [the court in the *Johnson* case] had already determined that the County was not estopped from enforcing that determination, the ALJ's review was limited to ordering and enforcing compliance with county code." But this argument falls outside the scope of the present appeal because the County did not raise this issue in its Petition for Permission to Appeal Interlocutory Order. Accordingly, we do not address it. *See Houghton v. Department of Health*, 2005 UT 63, ¶ 16, 125 P.3d 860 ("On interlocutory appeal, we review only those specific issues presented in the petition.").

2000 UT App 105, ¶ 11 n.9, 1 P.3d 558, Kodiak's appeal in the *Johnson* case would have been limited to the court's denial of its belated motion to intervene and would not have addressed the underlying issue of zoning estoppel, *see id.* ¶ 11 ("While the denial of a motion to intervene is appealable, it does not finally determine the merits of the intervenor's claim.") (citation omitted).

¶25 The County insists that Kodiak waived its right to appeal the court's decision in the *Johnson* case by failing to timely intervene. This argument is likewise unavailing because the County does not cite any authority imposing a duty to intervene. Indeed, the opposite appears to be true. *See Searle Bros. v. Searle*, 588 P.2d 689, 692 (Utah 1978) ("The right to intervene as a party in the prior suit does not bind the party in the subsequent suit where he failed to so intervene.").

CONCLUSION

¶26 In evaluating res judicata, the district court did not overrule the prior court's ruling in the *Johnson* case when it correctly determined that the County and Kodiak were not in privity with respect to the *Johnson* case. Accordingly, res judicata is not a bar to Kodiak's initiation of the present litigation.

¶27 Affirmed.

_____